### State of Connecticut *v.* Robert San Giovanni

Review Division of the Superior Court

Decided January 26, 1965

*Robert San Giovanni,* the defendant, pro se.

*Arthur T. Gorman,* state's attorney, for the state.

By the Division. The defendant, aged twenty-eight, did plead guilty to the counts contained in an information against him, two of which charged him with breaking and entering in violation of General Statutes § 53-76 and one with possession of burglars' tools in violation of General Statutes § 53-71. To the second part of the information, charging San Giovanni with being a second offender under General Statutes § 54-118, a plea of guilty was also entered.

As a second offender, the defendant was sentenced to state's prison for not less than five nor more than seven years on the first count, two years on the second count, and one year on the third count, or an effective sentence of not less than five and not

more than ten years in state's prison. The statutory penalties for the violation as contained in General Statutes § 53-76 are not more than four years, possession of burglars' tools, General Statutes § 53-71, not more than five years, and the second offender statute, § 54-118, permits the imposition of a term not exceeding double of those as set out for these crimes.

On January 2, 1964, with another, one Edward M. Gould, this defendant did break and enter the premises of the E. J. Davis Company in the nighttime with intent to steal money therein. On February 1, 1964, for the same reason, these men also did break and enter into the Montesi Motors Company. They were apprehended on the premises of the latter business establishment while trying to break open a safe. Burglars' tools were found in the possession of both this defendant and his associate in crime, Gould.

Though born in 1936, San Giovanni's record, disclosing a long-standing antagonism to authority, law and order, began in 1945. On December 6, 1948, he was committed to the Connecticut school for boys, where he remained until his sixteenth birthday. Less than seven months thereafter he was apprehended for breaking and entering and theft. For these offenses he was informed against in three counts, was found guilty of each and committed to the Connecticut reformatory, with execution of sentence suspended. After a series of convictions for lesser crimes, the defendant was sentenced on May 4, 1956, to state's prison for a term of not less than three and not more than six years for the crimes of statutory burglary with violence, statutory burglary, and illegal possession of weapons. Thereafter occurred some lesser crimes by this defendant, and on November 13, 1959, he was returned to state's

prison as a parole violator and was discharged upon the expiration of his maximum sentence on April 14, 1961. On March 19, 1963, this defendant was sentenced to jail for larceny. A violation of probation and further jail sentence followed on April 2, 1963.

This defendant seeks a reduction of his present sentence because, as he says, he does not believe that he deserved such a penalty. He told this board, somewhat generally, that he has seen others do worse than he had done and receive a lighter sentence. He seeks now to be released early to marry a woman with whom he says he has had a son. The defendant claims not to have been able to obtain employment due to his police record and a physical handicap which consists of the partial use only of his right hand and arm. This condition is a residual from being shot through the neck about eight years ago and falling some thirty feet from a roof.

There is doubtless some room here for sympathetic consideration of one so physically handicapped who feels that his position in life is caused by this impairment. However, his work record even before his fall was consistently unsatisfactory. He enlisted on the side of crime at a very early age and chose to earn his livelihood by burglaries.

We have examined the sentence complained of, the nature of the crimes committed by this defendant, his past record, the plea he has made, the transcript of his court appearance and the reports available to the sentencing judge. We find nothing in the sentence complained of which is improper. On the contrary, and considering the repetitive nature of the crimes of this defendant, and the exposure of society to such persistent incorrigibility, it is concluded that the disposition made as to the immediate

charges against him was lenient and, contrary to the defendant's assertions, eminently fair.

The sentence is affirmed.

BOGDANSKI, MEYERS and PALMER, Js., participated in this decision.